UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TAMARA COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-04058-SLD-JEH |
| | ) | |
| IOWA HEALTH SYSTEM, d/b/a | ) | |
| UNITYPOINT HEALTH, and TRINITY | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff Tamara Cox, by and through her attorneys, Katz Nowinski P.C., for her

Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure [filed

within 21 days of Defendant's Answer filed May 5, 2023] against the defendants, Iowa Health

System, d/b/a UnityPoint Health, and Trinity Medical Center, states as follows:

**COUNT I – ASSOCIATIONAL DISABILITY DISCRIMINATION
IN VIOLATION OF 775 ILCS 5/2-102 -Defendant UnityPoint**

1. Tamara Cox (hereinafter referred to as "Cox" or "Plaintiff") is a resident of Rock

Island, Rock Island County, Illinois.

2. Defendant Iowa Health System, d/b/a UnityPoint Health (hereinafter referred to as

"UnityPoint" or "Defendant"), is an Iowa not-for-profit corporation, which owns and/or operates

a hospital located in Rock Island, Rock Island County, Illinois.

3. Plaintiff timely filed her charge of discrimination with the Illinois Department of

Human Rights ("IDHR") on December 8, 2022, and has been issued her Right to Sue Letter by

the IDHR, and has otherwise exhausted her administrative remedies.  (Exhibit 1, a true and

correct copy of the "Notice of Opt Out of the Investigative and Administrative Process, Right to

Commence an Action in Circuit Court …" from the IDHR dated January 31, 2023, is attached hereto and made a part of this Complaint.)

4.   Exhibit 1 provides plaintiff, pursuant to 775 ILCS 5/7A-102(C-1), 95 days from the date of said Notice to commence an action in the appropriate circuit court.

5.   This Complaint was filed in the Circuit Court of Rock Island County within 95 days of January 31, 2023.

6.   On April 14, 2023, Defendant Iowa Health System, d/b/a UnityPoint Health removed this matter to this Court pursuant to 28 U.S.C. § 1446, on the basis of both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.   As pleaded in paragraph 3 of the Notice of Removal, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

8.   Pursuant to 775 ILCS 5/2-101(B)(1)(a) of the Act, defendant is an "employer" as "[a]ny person employing one or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation."

9.   Plaintiff was an employee as defined in 775 ILCS 5/2-101A.

10. Plaintiff was employed by UnityPoint and its predecessors for approximately 33 years beginning in 1989, last working as an Intake Coordinator.

11. At all times material to this claim, Plaintiff performed her job duties satisfactorily.

12. Plaintiff 's now deceased husband, Jack, suffered from several very serious medical conditions, including diabetes, heart failure, kidney failure, and neurological issues, and became paralyzed from the waist down in August 2021; Jack Cox was therefore a person with a disability

or disabilities which caused substantial physical impairments to him and affected the major life activities of walking and of working.

13. During the last part of Plaintiff's employment, Plaintiff's husband was transitioning between home, care facilities and home.

14. UnityPoint was aware of Plaintiff's husband's disabilities and their home care and nursing facility situation.

15. Prior to February 2022, Plaintiff was approached about taking FMLA and filled out the paperwork.

16. Plaintiff's supervisor/director commented negatively toward Plaintiff for Plaintiff filling out FMLA forms, telling her that FMLA would not protect her anyway, and giving Plaintiff the impression that she was wasting her time.

17. Plaintiff declined using FMLA in a block of time because she wanted to save that benefit for a later time when her husband would need her in a more significant role than she was already doing.

18. Plaintiff informed Defendant that she intended to take FMLA at a later date.

19. Defendant was pressuring Plaintiff to either go on leave or quit due to her husband's significant and deteriorating health condition.

20. On one occasion, Plaintiff's supervisor told Plaintiff that she needed to take the FMLA time and deal with her husband's issues and not be at work.

21. On another occasion Plaintiff's husband suffered a medical emergency (coded) and the floor nurses at his hospital called Plaintiff's office to inform her, which resulted in a verbal reprimand to Plaintiff because the floor nurses called the office phone to alert Plaintiff.

22. Shortly before Plaintiff was terminated her director informed Plaintiff that Plaintiff had sent a letter to a medical provider with the correct name and street address, but an incorrect suite number was listed due to a typographical error and Plaintiff's director said that it was a "HIPAA" issue.

23. The letter was taken to the correct suite number by the recipient.

24. UnityPoint terminated Plaintiff on February 22, 2022, but the paperwork was created indicating her employment ended February 23, 2022.

25. The termination was allegedly because of a HIPAA violation for having the incorrect suite number on the envelope mentioned above.

26. This was not a HIPAA violation as no protected medical information was released.

27. To Plaintiff's knowledge, no employee had been terminated or disciplined for an incorrectly addressed envelope or returned mail prior to Plaintiff's termination.

28. Plaintiff is aware that numerous employees in her former department would send out mail each day and mail is frequently returned within her department for incorrect or erroneous addresses with no consequences.

29. To Plaintiff's knowledge, UnityPoint had never alleged that an incorrectly addressed envelope or returned mail constituted a HIPAA violation prior to Plaintiff's termination.

30. The reason given for Plaintiff's termination was a pretext.

31.  A substantial motivating reason for Plaintiff's termination was because of her husband's disabilities.

32. UnityPoint therefore discriminated against Plaintiff on the basis of her husband's disabilities (association disability discrimination.)

4

33.  Defendant thus discriminated against Plaintiff in violation of 775 ILCS 5/2-102(A) "with respect to … discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination," specifically her husband's disabilities.

34. By reason of Defendant's violation of 775 ILCS 5/2-102(A), Plaintiff is entitled to and seeks actual damages pursuant to 775 ILCS 5/10-102(C), including but not limited to lost wages and benefits as well as loss of the life insurance policy on Plaintiff's husband and damages for loss of enjoyment of life, and emotional pain and suffering in the past, present and future, all in an amount in excess of $75,000.00.

35. Additionally, pursuant to 775 ILCS 5/10-102(C)(2), Plaintiff requests that this Court grant her reasonable attorney's fees and costs.

36.  Pursuant to 775 ILCS 5/10-102(C)(1) Plaintiff also seeks equitable relief in the form of permanent or preliminary injunctive relief and restraining orders enjoining defendant from engaging in such civil rights violations in the future and reinstating her to her position with full seniority, back pay plus interest and potential front pay in lieu of reinstatement, if deemed appropriate.

37. Plaintiff is also seeking punitive or exemplary damages pursuant to 775 ILCS 5/10-102(C)(1), which provides that the Court may award the plaintiff "actual and punitive damages."

38. In support of awarding punitive damages, Plaintiff alleges that Defendants' conduct demonstrates intentional or willful misconduct or a gross indifference to, or a reckless disregard of, the public policy of this State that employees are to be free from discrimination based on associational disability.

WHEREFORE, Plaintiff Tamara Cox, requests this court enter judgment in her favor and against the Defendant, Iowa Health System, in an amount in excess of $75,000, plus the costs of

this action, including reasonable attorney's fees, and expert witness fees, punitive or exemplary

damages, as well as equitable relief appropriate under the circumstances.

## COUNT II – ASSOCIATIONAL DISABILITY DISCRIMINATION
## IN VIOLATION OF 775 ILCS 5/2-102 -Defendant Trinity Medical Center

1. Tamara Cox (hereinafter referred to as "Cox" or "Plaintiff") is a resident of Rock

Island, Rock Island County, Illinois.

2. Defendant Trinity Medical Center (hereinafter referred to as "Trinity" or

"Defendant"), is an Illinois not-for-profit corporation, with its principal place of business located

in Rock Island, Rock Island County, Illinois.

3. Plaintiff timely filed her charge of discrimination with the Illinois Department of

Human Rights ("IDHR") on December 8, 2022, and has been issued her Right to Sue Letter by

the IDHR, and has otherwise exhausted her administrative remedies.  (Exhibit 1, a true and

correct copy of the "Notice of Opt Out of the Investigative and Administrative Process, Right to

Commence an Action in Circuit Court …" from the IDHR dated January 31, 2023, is attached

hereto and made a part of this Complaint.)

4. Exhibit 1 provides plaintiff, pursuant to 775 ILCS 5/7A-102(C-1), 95 days from

the date of said Notice to commence an action in the appropriate circuit court.

5. This Complaint was filed in the Circuit Court of Rock Island County within 95

days of January 31, 2023.

6. On April 14, 2023, Defendant Iowa Health System, d/b/a UnityPoint Health

(hereinafter "Unity Point") removed this matter to this Court pursuant to 28 U.S.C. § 1446,

on the basis of both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity

jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.   As pleaded in paragraph 3 of the Notice of Removal, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

8.   Pursuant to 775 ILCS 5/2-101(B)(1)(a) of the Act, Trinity is an "employer" as "[a]ny person employing one or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged violation."

9.   Defendant, Unity Point, asserts that Plaintiff was technically an employee of Trinity.

10. Specifically, Plaintiff's W-2 identifies her employer as "QC Trinity Medical Center."

11. Alternatively, Plaintiff was a joint employee of Unity Point and Trinity.

12.  Personnel documents within Plaintiff's personnel file (produced pursuant to a request through both "Unity Point -Trinity" and Precedence, Inc. at 4600 3rd Street, Moline, Illinois, on the UnityPoint Trinity campus), identify Plaintiff's employer as "Unity Point Health – Trinity," for purposes of discipline, human resources, and exit interview, all on UnityPoint – Trinity business forms, but list her department assignment as "Precedence, Inc."

13. Additionally, as an example, the "Illinois Health Facilities and Services Review Board Discontinuation Application for Exemption" filed March 20, 2020 identifies the "Facility Name" as "Trinity Medical Center," but also lists under "Exact Legal Name" the following: "Iowa Health System d/b/a UnityPoint Health."

14. Accordingly, Iowa Health System d/b/a UnityPoint Health and Trinity Medical Center are associated with respect to Plaintiff's employment such that they may be deemed to share control and constitute joint employers; or, alternatively, both entities exercise some control over the work and working conditions of Plaintiff such that they may be deemed joint employers.

15. Plaintiff was employed by Trinity for approximately 33 years beginning in 1989, last working as an Intake Coordinator for the Precedence, Inc. Department of UnityPoint Health – Trinity in Rock Island County, Illinois.

16. At all times material to this claim, Plaintiff performed her job duties satisfactorily.

17. Plaintiff 's now deceased husband, Jack, suffered from several very serious medical conditions, including diabetes, heart failure, kidney failure, and neurological issues, and became paralyzed from the waist down in August 2021; Jack Cox was therefore a person with a disability or disabilities which caused substantial physical impairments to him and affected the major life activities of walking and of working.

18. During the last part of Plaintiff's employment, Plaintiff's husband was transitioning between home, care facilities and home.

19. Trinity was aware of Plaintiff's husband's disabilities and their home care and nursing facility situation.

20. Prior to February 2022, Plaintiff was approached about taking FMLA and filled out the paperwork.

21. Plaintiff's supervisor/director commented negatively toward Plaintiff for Plaintiff filling out FMLA forms, telling her that FMLA would not protect her anyway, and giving Plaintiff the impression that she was wasting her time.

22. Plaintiff declined using FMLA in a block of time because she wanted to save that benefit for a later time when her husband would need her in a more significant role than she was already doing.

23. Plaintiff informed Trinity that she intended to take FMLA at a later date.

8

24. Trinity was pressuring Plaintiff to either go on leave or quit due to her husband's significant and deteriorating health condition.

25. On one occasion, Plaintiff's supervisor told Plaintiff that she needed to take the FMLA time and deal with her husband's issues and not be at work.

26. On another occasion Plaintiff's husband suffered a medical emergency (coded) and the floor nurses at his hospital called Plaintiff's office to inform her, which resulted in a verbal reprimand to Plaintiff because the floor nurses called the office phone to alert Plaintiff.

27. Shortly before Plaintiff was terminated her director informed Plaintiff that Plaintiff had sent a letter to a medical provider with the correct name and street address, but an incorrect suite number was listed due to a typographical error and Plaintiff's director said that it was a "HIPAA" issue.

28. The letter was taken to the correct suite number by the recipient.

29. Trinity terminated Plaintiff on February 22, 2022, but the paperwork was created indicating her employment ended February 23, 2022.

30. The termination was allegedly because of a HIPAA violation for having the incorrect suite number on the envelope mentioned above.

31. This was not a HIPAA violation as no protected medical information was released.

32. To Plaintiff's knowledge, no employee had been terminated or disciplined for an incorrectly addressed envelope or returned mail prior to Plaintiff's termination.

33. Plaintiff is aware that numerous employees in her former department would send out mail each day and mail is frequently returned within her department for incorrect or erroneous addresses with no consequences.

34. To Plaintiff's knowledge, Trinity had never alleged that an incorrectly addressed envelope or returned mail constituted a HIPAA violation prior to Plaintiff's termination.

35. The reason given for Plaintiff's termination was a pretext.

36. A substantial motivating reason for Plaintiff's termination was because of her husband's disabilities.

37. Trinity therefore discriminated against Plaintiff on the basis of her husband's disabilities (association disability discrimination.)

38. Trinity thus discriminated against Plaintiff in violation of 775 ILCS 5/2-102(A) "with respect to … discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination," specifically her husband's disabilities.

39. By reason of Trinity's violation of 775 ILCS 5/2-102(A), Plaintiff is entitled to and seeks actual damages pursuant to 775 ILCS 5/10-102(C), including but not limited to lost wages and benefits as well as loss of the life insurance policy on Plaintiff's husband and damages for loss of enjoyment of life, and emotional pain and suffering in the past, present and future, all in an amount in excess of $75,000.00.

40. Additionally, pursuant to 775 ILCS 5/10-102(C)(2), Plaintiff requests that this Court grant her reasonable attorney's fees and costs.

41. Pursuant to 775 ILCS 5/10-102(C)(1) Plaintiff also seeks equitable relief in the form of permanent or preliminary injunctive relief and restraining orders enjoining Trinity from engaging in such civil rights violations in the future and reinstating her to her position with full seniority, back pay plus interest and potential front pay in lieu of reinstatement, if deemed appropriate.

42. Plaintiff is also seeking punitive or exemplary damages pursuant to 775 ILCS 5/10-102(C)(1), which provides that the Court may award the plaintiff "actual and punitive damages."

43. In support of awarding punitive damages, Plaintiff alleges that Trinity's conduct demonstrates intentional or willful misconduct or a gross indifference to, or a reckless disregard of, the public policy of this State that employees are to be free from discrimination based on associational disability.

WHEREFORE, Plaintiff Tamara Cox, requests this court enter judgment in her favor and against the Defendant, Trinity Medical Center, in an amount in excess of $75,000, plus the costs of this action, including reasonable attorney's fees, and expert witness fees, punitive or exemplary damages, as well as equitable relief appropriate under the circumstances.

## COUNT III – FMLA RETALIATION – Iowa Health System

1. Tamara Cox (hereinafter referred to as "Cox" or "Plaintiff") is a resident of Rock Island, Rock Island County, Illinois.

2. Defendant Iowa Health System, d/b/a UnityPoint Health (hereinafter referred to as "UnityPoint" or "Defendant"), is an Iowa not-for-profit corporation, which owns and/or operates a hospital system located in Rock Island, Rock Island County, Illinois.

3. Count III is brought pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq*,.

4. On April 14, 2023, Defendant Iowa Health System, d/b/a UnityPoint Health removed this matter to this Court pursuant to 28 U.S.C. § 1446, on the basis of both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

5.  As pleaded in paragraph 3 of the Notice of Removal, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

6.  Cox was an employee protected by FMLA and eligible for FMLA leave in that as of February 2022, she had worked more than 1,250 hours of service for Defendant during the previous 12-month period and she had been continuously employed for more than 12 months by Defendant.

7.  Defendant at all relevant times employed over 50 persons within a 75-mile radius and therefore was an "employer" for purposes of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

8.  Plaintiff was employed by UnityPoint and its predecessors for approximately 33 years beginning in 1989, last working as an Intake Coordinator.

9.  At all times material to this claim, Plaintiff performed her job duties satisfactorily.

10. Plaintiff 's now deceased husband, Jack, suffered from several very serious medical conditions, including diabetes, heart failure, kidney failure, and neurological issues, and became paralyzed from the waist down in August 2021.

11. During the last part of Plaintiff's employment, Plaintiff's husband was transitioning between home, care facilities and home.

12. UnityPoint was aware of Plaintiff's husband's disabilities and their home care and nursing facility situation.

13. Prior to February 2022, Plaintiff was approached about taking FMLA and filled out the paperwork.

14. Plaintiff's supervisor/director chastised her for filling out FMLA forms, telling her that FMLA would not protect her anyway, and giving her the impression that she was wasting her time.

15. Plaintiff declined using FMLA in a block of time because she wanted to save that benefit for a later time when her husband would need her in a more significant role than she was already doing.

16. Plaintiff informed Defendant that she intended to take FMLA at a later date.

17. Defendant was pressuring Plaintiff to either go on leave or quit due to her husband's significant and deteriorating health condition.

18. On one occasion, Plaintiff's supervisor told Plaintiff that she needed to take the FMLA time and deal with her husband's issues and not be at work.

19. On another occasion Plaintiff's husband suffered a medical emergency (coded) and the floor nurses at his hospital called Plaintiff's office to inform her, which resulted in a verbal reprimand to Plaintiff because the floor nurses called the office phone to alert Plaintiff.

20. Shortly before Plaintiff was terminated, her director informed Plaintiff that Plaintiff had sent a letter to a medical provider with the correct name and street address, but an incorrect suite number was listed due to a typographical error and Plaintiff's director said that it was a "HIPAA" issue.

21. The letter was taken to the correct suite number by the recipient.

22. UnityPoint terminated Plaintiff on February 22, 2022, but the paperwork was created indicating her employment ended February 23, 2022.

23. The termination was allegedly because of a HIPAA violation for having the incorrect suite number on the envelope mentioned above.

24. This was not a HIPAA violation as no protected medical information was released.

25. To Plaintiff's knowledge, no employee had been terminated or disciplined for an incorrectly addressed envelope or returned mail prior to Plaintiff's termination.

26. To Plaintiff's knowledge, UnityPoint had never alleged that an incorrectly addressed envelope or returned mail constituted a HIPAA violation prior to Plaintiff's termination.

27. Plaintiff is aware that numerous employees in her former department would send out mail each day and mail is frequently returned within her department for incorrect or erroneous addresses with no consequences.

28. The reason given for Plaintiff's termination was a pretext.

29. The decision to terminate Plaintiff was based in part to prevent Plaintiff from taking anticipated periods of future leave to provide care for a family member's serious health condition, specifically her husband's serious health conditions including diabetes, heart failure, kidney failure, and neurological issues, and paralysis from the waist down in August 2021, a FMLA qualifying serious health condition.

30. Plaintiff was therefore terminated from her employment with Defendant in retaliation for her known need of taking future FMLA leave to provide care for a family member's serious health condition, which leave is and was protected under the Family and Medical Leave Act.

31. Defendant thereby retaliated against Plaintiff for exercising or attempting to exercise her rights under the Family and Medical Leave Act.

14

32. Defendant unlawfully retaliated against Plaintiff's exercise of her rights to FMLA leave in violation of 29 U.S.C. § 2615(a) by discharging the Plaintiff on February 22, 2022 because of the need of taking FMLA leave to provide care for a family member's serious health condition, in violation of the FMLA.

33. As a proximate result of Defendant's violation(s) of the FMLA, Plaintiff is entitled to and seeks recovery of damages under 29 U.S.C. § 2617(a) equal to the amount of back wages that she lost from February 22, 2022 through the date of trial, an additional amount equal to the lost employment benefits including pension, retirement payments health insurance coverage payments, the value of the employer's spousal life insurance coverage on Plaintiff's husband, interest on all amounts at the prevailing rate, liquidated damages equal to the amount of lost wages, salaries, employment benefits, and other compensatory damages and interest on that amount.

34. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to and seeks recovery of reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action.

35. Pursuant to 29 U.S.C. § 2617, Plaintiff is entitled to and seeks equitable relief in the nature of reinstatement and/or front pay.

WHEREFORE, Plaintiff Tamara Cox, requests this court enter judgment in her favor and against the Defendant, Iowa Health System, in an amount in excess of $75,000, plus the costs of this action, including reasonable attorney's fees, and expert witness fees, punitive or exemplary damages, as well as equitable relief appropriate under the circumstances.

## COUNT IV – FMLA RETALIATION -Trinity Medical Center

15

1. Tamara Cox (hereinafter referred to as "Cox" or "Plaintiff") is a resident of Rock Island, Rock Island County, Illinois.

2. Defendant Trinity Medical Center (hereinafter referred to as "Trinity" or "Defendant"), is an Illinois not-for-profit corporation, with its principal place of business located in Rock Island, Rock Island County, Illinois.

3. Count IV is brought pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.*

4. On April 14, 2023, Defendant Iowa Health System, d/b/a UnityPoint Health (hereinafter "Unity Point") removed this matter to this Court pursuant to 28 U.S.C. § 1446, on the basis of both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

5. As pleaded in paragraph 3 of the Notice of Removal, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

6. Cox was an employee protected by FMLA and eligible for FMLA leave in that as of February 2022, she had worked more than 1,250 hours of service for Trinity during the previous 12-month period and she had been continuously employed for more than 12 months by Defendant.

7. Trinity at all relevant times employed over 50 persons within a 75-mile radius and therefore was an "employer" for purposes of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

8. Defendant, Unity Point, asserts that Plaintiff was technically an employee of Trinity.

9. Specifically, Plaintiff's W-2 identifies her employer as "QC Trinity Medical Center."

10. Alternatively, Plaintiff was a joint employee of Unity Point and Trinity.

11.  Personnel documents within Plaintiff's personnel file (produced pursuant to a request through both "Unity Point -Trinity" and Precedence, Inc. at 4600 3rd Street, Moline, Illinois, on the UnityPoint Trinity campus), identify Plaintiff's employer as "Unity Point Health – Trinity," for purposes of discipline, human resources, and exit interview, all on UnityPoint – Trinity business forms, but list her department assignment as "Precedence, Inc."

12. Additionally, as an example, the "Illinois Health Facilities and Services Review Board Discontinuation Application for Exemption" filed March 20, 2020 identifies the "Facility Name" as "Trinity Medical Center," but also lists under "Exact Legal Name" the following: "Iowa Health System d/b/a UnityPoint Health."

13. Accordingly, pursuant to 29 C.F.R. § 825.106, Iowa Health System d/b/a UnityPoint Health and Trinity Medical Center are associated with respect to Plaintiff's employment such that they may be deemed to share control and constitute joint employers; or, alternatively, both entities exercise some control over the work and working conditions of Plaintiff such that they may be deemed joint employers.

14. Plaintiff was employed by Trinity for approximately 33 years beginning in 1989, last working as an Intake Coordinator for the Precedence, Inc. Department of UnityPoint Health – Trinity in Rock Island County, Illinois.

15. At all times material to this claim, Plaintiff performed her job duties satisfactorily.

16. Plaintiff 's now deceased husband, Jack, suffered from several very serious medical conditions, including diabetes, heart failure, kidney failure, and neurological issues, and became paralyzed from the waist down in August 2021.

17. During the last part of Plaintiff's employment, Plaintiff's husband was transitioning between home, care facilities and home.

18. Trinity was aware of Plaintiff's husband's disabilities and their home care and nursing facility situation.

19. Prior to February 2022, Plaintiff was approached about taking FMLA and filled out the paperwork.

20. Plaintiff's supervisor/director chastised her for filling out FMLA forms, telling her that FMLA would not protect her anyway, and giving her the impression that she was wasting her time.

21. Plaintiff declined using FMLA in a block of time because she wanted to save that benefit for a later time when her husband would need her in a more significant role than she was already doing.

22. Plaintiff informed Trinity that she intended to take FMLA at a later date.

23. Trinity was pressuring Plaintiff to either go on leave or quit due to her husband's significant and deteriorating health condition.

24. On one occasion, Plaintiff's supervisor told Plaintiff that she needed to take the FMLA time and deal with her husband's issues and not be at work.

25. On another occasion Plaintiff's husband suffered a medical emergency (coded) and the floor nurses at his hospital called Plaintiff's office to inform her, which resulted in a verbal reprimand to Plaintiff because the floor nurses called the office phone to alert Plaintiff.

26. Shortly before Plaintiff was terminated, her director informed Plaintiff that Plaintiff had sent a letter to a medical provider with the correct name and street address, but an

incorrect suite number was listed due to a typographical error and Plaintiff's director said that it was a "HIPAA" issue.

27. The letter was taken to the correct suite number by the recipient.

28. Trinity terminated Plaintiff on February 22, 2022, but the paperwork was created indicating her employment ended February 23, 2022.

29. The termination was allegedly because of a HIPAA violation for having the incorrect suite number on the envelope mentioned above.

30. This was not a HIPAA violation as no protected medical information was released.

31. To Plaintiff's knowledge, no employee had been terminated or disciplined for an incorrectly addressed envelope or returned mail prior to Plaintiff's termination.

32. To Plaintiff's knowledge, Trinity had never alleged that an incorrectly addressed envelope or returned mail constituted a HIPAA violation prior to Plaintiff's termination.

33. Plaintiff is aware that numerous employees in her former department would send out mail each day and mail is frequently returned within her department for incorrect or erroneous addresses with no consequences.

34. The reason given for Plaintiff's termination was a pretext.

35. The decision to terminate Plaintiff was based in part to prevent Plaintiff from taking anticipated periods of future leave to provide care for a family member's serious health condition, specifically her husband's serious health conditions including diabetes, heart failure, kidney failure, and neurological issues, and paralysis from the waist down in August 2021, a FMLA qualifying serious health condition.

36. Plaintiff was therefore terminated from her employment with Defendant in retaliation for her known need of taking future FMLA leave to provide care for a family member's serious health condition, which leave is and was protected under the Family and Medical Leave Act.

37. Defendant thereby retaliated against Plaintiff for exercising or attempting to exercise her rights under the Family and Medical Leave Act.

38. Defendant unlawfully retaliated against Plaintiff's exercise of her rights to FMLA leave in violation of 29 U.S.C. § 2615(a) by discharging the Plaintiff on February 22, 2022 because of the need of taking FMLA leave to provide care for a family member's serious health condition, in violation of the FMLA.

39. As a proximate result of Defendant's violation(s) of the FMLA, Plaintiff is entitled to and seeks recovery of damages under 29 U.S.C. § 2617(a) equal to the amount of back wages that she lost from February 22, 2022 through the date of trial, an additional amount equal to the lost employment benefits including pension, retirement payments health insurance coverage payments, the value of the employer's spousal life insurance coverage on Plaintiff's husband, interest on all amounts at the prevailing rate, liquidated damages equal to the amount of lost wages, salaries, employment benefits, and other compensatory damages and interest on that amount.

40. Pursuant to 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to and seeks recovery of reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action.

41. Pursuant to 29 U.S.C. § 2617, Plaintiff is entitled to and seeks equitable relief in the nature of reinstatement and/or front pay.

WHEREFORE, Plaintiff Tamara Cox, requests this court enter judgment in her favor and against the Defendant, Trinity Medical Center, in an amount in excess of $75,000, plus the costs of this action, including reasonable attorney's fees, and expert witness fees, punitive or exemplary damages, as well as equitable relief appropriate under the circumstances.


TAMARA COX, Plaintiff


By:____/s/ John F. Doak_____
     John F. Doak (ARDC # 6204122)


For:
KATZ NOWINSKI P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
Moline, IL 61265-7126
Telephone:  309-797-3000
Fax:  309-797-3330
E-mail: jdoak@katzlawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I caused the foregoing document to be filed via the Court's ECF system, which caused electronic notification upon all counsel of record.

/s/ John F. Doak_____